**Marion Gulizo TRUPIANO, Widow of George P. Trupiano, Sr., et al., Plaintiffs-Appellants,**

v.

**SWIFT & CO., n/k/a Estech, Inc., Defendant-Appellee.**

No. 84–3333.

United States Court of Appeals, Fifth Circuit.

March 18, 1985.

Gertler & Gertler, M.H. Gertler, Cheryl A. Denney, New Orleans, La., for plaintiffs-appellants.

Turner, Young & Hebbler, Thomas M. Young, New Orleans, La., for defendant-appellee.

Before GEE, REAVLEY and RANDALL, Circuit Judges.

REAVLEY, Circuit Judge:

Marion Gulizo Trupiano, the widow of George P. Trupiano, Sr., and her six children appeal the dismissal under Fed.R. Civ.P. 12(b)(6) of this diversity action seeking damages from Trupiano's former employer, Swift and Company, arising from his death on January 5, 1983. Because we read the complaint to state valid grounds for a tort action under Louisiana law, an action not precluded by Louisiana Worker's Compensation law, we reverse the judgment of the district court and remand the case to the district court for further proceedings.

George P. Trupiano, Sr., was employed by Swift in various positions between 1944 and 1968. The complaint alleges that he was exposed in the normal routine of his employment to various toxic materials and irritants, as well as dust. It also states that exposure to these substances caused Trupiano to contract pneumoconiosis. Additionally, it alleges that he "died of lung cancer which was caused and/or contributed to by his occupational exposure to the aforementioned toxic materials." The complaint fails to state, however, when the disease manifested itself or when its damage began.

As to Swift's culpability, the complaint states that the company knew of the danger involved in the exposure to toxic substances. It alleges that Swift intentionally failed to warn Trupiano of this danger and to take steps to protect him from it. It also states that Swift was substantially certain that Trupiano's injuries would follow from its intentional acts.

In reviewing a case dismissed on the pleadings, we must accept as established all factual allegations contained therein. *Woodard v. Los Fresnos Independent School District*, 732 F.2d 1243, 1245 (5th Cir.1984). Dismissal was improper unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would provide a basis for relief. *Id.* at 1245 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

The appellants have brought a survival action inherited from Trupiano. *See* La.Civ.Code Ann. § 2315 (West Supp.1985). As explained by the Louisiana Supreme Court in *Owens v. Martin*, 449 So.2d 448, 452 (La.1984), the survival action arose whenever Trupiano suffered damage. *See Ducre v. Executive Officers of Halter Marine, Inc.*, 752 F.2d 976, 982–983 (5th Cir. 1985). On the question of damage and latent diseases, the *Owens* court referred to *Quick v. Murphy*, 446 So.2d 775 (La.

App.1984), *writ denied,* 447 So.2d 1074 (La. 1984), which adopted the "contraction" theory first espoused in *Faciane v. Southern Shipbuilding Corp.,* 446 So.2d 770 (La. App.1984). *Owens,* 449 So.2d at 452 n. 5. Under the contraction theory, damage has occurred once the disease "will progress independent of further exposure" to the offensive substance. *Faciane,* 446 So.2d at 773. Although it did not expressly adopt the contraction theory in *Owens,* the Louisiana Supreme Court stated that "the time of contracting the disease could, within limits, be determined by medical experts." *Owens,* 449 So.2d at 452 n. 5.[1] The determination of when Trupiano suffered damage is relevant here, as in *Ducre,* because Trupiano was exposed to toxic substances before the 1976 amendments to the Louisiana Worker's Compensation Law, La.Rev. Stat.Ann. § 23:1021–1351 (West 1964 & Supp.1985), but perhaps suffered no damage under the Louisiana rule and, of course, did not die until after the amendments were enacted. Because this case was dismissed under Fed.R.Civ.P. 12(b)(6), and the district court made no findings of fact, we are unable to determine when the survival action arose. We will therefore discuss whether the torts alleged can be maintained in the survival action under Louisiana law as it existed before and after 1976.

■ The appellants have also brought their own wrongful death action. *See* La. Civ.Code Ann. § 2315 (West Supp.1985). The wrongful death action is considered a separate and distinct cause of action from the survival action, although they both arise from common alleged torts. *Holmes v. Pottharst,* 438 So.2d 622, 623 (La.App. 1983), *writ denied,* 447 So.2d 1076 (La. 1984). The wrongful death action did not arise until Trupiano's death in 1983 and it is governed by the law in existence after 1976. *See Holmes,* 438 So.2d at 624; *Smith v. Hurd,* 408 So.2d 357, 359 (La.App. 1981).

■ Appellants contend that an intentional tort was alleged and that this claim is one outside of the exclusive remedy of worker's compensation. We agree. Until 1976, worker's compensation covered only personal injuries caused "by accident arising out of and in the course of ... employment." La.Rev.Stat.Ann. § 23:1031 (West 1964). Accident was defined as "an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury." *Id.* § 23:1021(1). Employees with injuries not covered under worker's compensation were allowed to seek recovery under general tort law. *Samson v. Southern Bell Telephone and Telegraph Co.,* 205 So.2d 496, 500–02 (La. App.1967). The appellants in this case have clearly alleged an injury outside the scope of worker's compensation as it existed until 1976. They have also alleged facts that, if proved, would allow them to recover under Louisiana law. The *Samson* court concluded that an employer has the obligation to furnish employees a safe place to work and the obligation to refrain "from knowingly, intentionally and deliberately requiring the performance of duties, which because of circumstances known to the employer, exposes the employee to the imminent danger of [harm]." *Id.* at 502–03. After the worker's compensation statute was amended in 1976, intentional tort actions were specifically excluded from its coverage. La.Rev.Stat.Ann. § 23:1032 (West Supp.1985). To allege an intentional tort under section 1032, the complaint must state that the defendant "desired the results of his acts or omissions or that he believed the consequences were substantially certain to result from them." *Bazley v. Tortorich,* 397 So.2d 475, 482 (La.1981). The complaint in this case adequately alleges an intentional tort under this standard. Having alleged an intentional tort under Louisiana law regardless of when the cause of action arose, the appellants are entitled

---

**1.** Once the cause of action arises, the running of the prescription period may be tolled by the doctrine of "contra non valentem agere non currit prescriptio." *Owens v. Martin,* 449 So.2d 448, 451 n. 4 (La.1984).

to pursue that claim in the survival action and the wrongful death action.

The appellants have also alleged another ground for a tort action in the survival claim which may be outside the exclusive coverage of worker's compensation. The statute was amended in 1952 to provide coverage for certain occupational diseases, including pneumoconiosis. La. Rev.Stat.Ann. § 23.1031.1 (West 1964), *amended by* La.Rev.Stat.Ann. § 23.1031.1 (West Supp.1985). A claim for pneumoconiosis could therefore have been brought *only* under worker's compensation. Lung cancer is not one of the listed occupational diseases, however, and another approach must be taken to determine whether it was covered by worker's compensation in Trupiano's case.

Under the 1952 version of section 1031.1, diseases not explicitly covered were tested against a list of toxic substances. If the disease in question could have been contracted from exposure to one of the listed substances, it was covered by worker's compensation. *Hicks v. Liberty Mutual Insurance Co.*, 165 So.2d 51, 53 (La.App. 1964). The appellants' complaint alleges that Trupiano died from lung cancer but does not state specifically the substance to which he was exposed. If the substance that caused him to contract cancer is not on the list, Trupiano could have had another potentially valid action in tort. The resolution of this factual issue will determine whether the survival action can be maintained on this basis apart from worker's compensation, assuming the cause of action arose before 1976. Neither cause of action will be available on this basis if the cause of action arose after the 1976 amendments became effective. As the appellants concede in their supplemental brief, the amended version of the worker's compensation statute provides an employee's sole remedy for occupational diseases unless they are the result of intentional acts. *See* La.Rev.Stat.Ann. §§ 23:1031.1, 1032 (West Supp.1985).

REVERSED AND REMANDED.