Belva H. BERGERON, et al.

v.

CELOTEX CORPORATION, et al.

Civ. A. No. 90–1389.

United States District Court,
E.D. Louisiana.

June 4, 1991.

Marcia A. Finkelstein, Gertler, Gertler & Vincent, New Orleans, La., for plaintiffs.

Anthony J. Staines, Elise Marie Beauchamp, Ellefson, Pulver & Staines, Metairie, La., for Eagle–Picher Industries, Inc.

Michael T. Cali, John J. Hainkel, III, Dwight C. Paulsen, III, Lemle & Kelleher, New Orleans, La., for Owens–Corning Fiberglas Corp.

Catherine I. Chavarri, Maria I. O'Byrne Stephenson, Maria I. Patino Caro, Lisa C. Matthews, New Orleans, La., for Rockwool Mfg. Co., Inc.

Richard L. Forman, Walter G. Watkins, Jr., Fred Krutz, III, Ronald D. Collins, Daniel J. Mulholland, Curtis E. Presley, III, John D. Cosmich, Forman, Perry, Watkins & Krutz, Jackson, Miss., for Owens–Illinois Corp. and Keene Corp.

Francis P. Accardo, Montgomery, Varnett, Brown, Read, Hammond & Mintz, New Orleans, La., for Celotex Corp.

Robert H. Cooper, Blue, Williams & Buckley, Metairie, La., for Babcock & Wilcox.

Lynn M. Luker, Rebecca A. Bush, Adams & Reese, New Orleans, La., for Foster Wheeler Corp.

Robert E. Kerrigan, Jr., A. Wendel Stout, III, Ethel H. Cohen, Marc J. Yellin, Barbara L. Arras, Janet L. MacDonnell, Jude D. Bourque, Ronald L. Courtade, Jr., Deutsch, Kerrigan & Stiles, New Orleans, La., for GAF Corp., Armstrong World Industries and Turner–Newall Ltd.

Thomas M. Bergstedt, Bergstedt & Mount, Lake Charles, La., for Owens–Illinois Corp., Southern Textile Corp., Keene Corp., and H.K. Porter.

J. Michael Johnson, Galloway, Johnson, Tompkins & Burr, New Orleans, La., for Combustion Engineering, Inc.

Grey Redditt, Jr., McCarfferty & Redditt, Mobile, Ala., for H.K. Porter Co. and Southern Textile.

James S. Thompson, Pamela A. Schmitt, Porteous, Hainkel, Johnson & Sarpy, New Orleans, La., for Fibreboard Corp. and Pittsburgh Corning Corp.

Jesse R. Adams, Jr., Adams & Johnston, New Orleans, La., for Manville Corp.

Dominic J. Ovella, John T. Culotta, Hailey, McNamara, Hall, Larmann & Papale, Metairie, La., for Flintkote Co.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on various motions of the parties described below:

(1) Defendants, Foster Wheeler Corporation and Flintkote Company's Motion for Partial Summary Judgment dismissing plaintiff Loretta Ann Young's [decedent's daughter's] wrongful death claim on the basis of prescription;

(2) Defendant, Foster Wheeler's Motion for Partial Summary Judgment dismissing plaintiffs' wrongful death claims, on the basis that their exclusive remedy is in Worker's Compensation, LSA–R.S. 23:1032.

(3) Plaintiff, Belva H. Bergeron's Motion to Extend Deadline for Amending the Pleadings, which is opposed by defendant Foster Wheeler on the basis that plaintiffs have had more than adequate time to initiate discovery and amend their pleadings based thereon and therefore the cutoff date for amendments to the pleadings should not be extended/reset for a third time.

These matters were set for oral hearing on Wednesday, May 22, 1991, but were submitted on briefs without oral argument.

I. UNDISPUTED FACTUAL BACKGROUND.

Plaintiffs' decedent, Albert Bergeron, died on August 1, 1989. Plaintiff Belva Bergeron, his widow, timely filed a wrongful death claim, within a year of the date of his death. On February 20, 1991, eighteen

months after the death of Mr. Bergeron, plaintiff filed a supplemental and amending complaint adding Loretta Ann Young a surviving major child, as a party plaintiff.[1]

Decedent, Albert Bergeron was employed by Foster Wheeler as an iron worker during the 1st quarter of 1967, that is from February 8, 1967 to March 21, 1967. In 1967, Foster Wheeler was the general contractor which built a steam generator for NOPSI at its plant in Michoud Louisiana. It was at this facility that plaintiffs' decedent Albert Bergeron was employed by Foster Wheeler as an ironworker, during the first quarter of 1967.[2]

The issues before this Court are questions of law, to wit: (1) whether the post-prescription amended petition adding decedent's major child as party plaintiff relates back to the date of the filing of decedent's widow's timely filed original petition; and (2) whether plaintiff's petition sets forth a cause of action for wrongful death in tort or whether plaintiff's sole remedy is in worker's compensation.

Plaintiffs in the case at bar have taken the position as to Ms. Young's wrongful death claim, that Louisiana rules of law relating to the applicable statute of limitations is substantive and therefore, Louisiana substantive law governing post-prescription amendment to the pleading when applied to the facts before this Court admit "relation back" to Belva Bergeron's timely filed wrongful death action. As to the timely filed wrongful death claim on behalf of original plaintiff Belva Bergeron, it is plaintiff's position that her wrongful death action accrued prior to the 1976 Amendment to the Louisiana Worker's Compensation Statute. Essentially, plaintiff argues that decedent's disease "mesothelioma"

was not listed as an "occupational disease" under L.R.S. 23:1031.1 at the time decedent contracted his disease [i.e. prior to the 1976 Amendment], and she should therefore be allowed to pursue her remedy in tort.

## II. THE LAW.

### 1. *Applicable Law Generally.*

Jurisdiction of this case is based upon diversity, and therefore substantive issues regarding prescription are to be governed by state law.[3] Louisiana Civil Code Article 2315 provides the basis of the wrongful death and the survival actions asserted by the plaintiff, Belva Bergeron. A decedent's statutorily designated beneficiaries may assert two causes of action against the tortfeasors who cause the death of the decedent—victim.

■ Specifically, the beneficiary may bring a survival action, i.e., an action for those damages the injured person could have claimed, had he lived; a beneficiary may also bring a wrongful death action, i.e., an action for such damages as the beneficiaries may have sustained as a result of the decedent's death.[4] At issue in this case are: (1) Decedent's surviving daughter's (Ms. Young's) wrongful death claim; and (2) Decedent's widow's (Belva Bergeron's) wrongful death claim.

### 2. *Ms. Young's Wrongful Death Claim—Relation Back.*

■ As previously mentioned, issues concerning state statutes of limitations are considered substantive for purposes of an *Erie* analysis.[5]

---

1. The amendment to the pleadings adding Ms. Young as party plaintiff was post-prescription [i.e. more than a year from the date of the death of her father].

2. Plaintiff Belva Bergeron does not contest that her decedent's exposure to asbestos occurred prior to the 1976 Amendment to the Louisiana Worker's Compensation Act, nor does she contest that her husband was Foster Wheeler's employee during the first quarter of 1967. See, Plaintiff's Memorandum in Opposition filed May 15, 1991, at p. 2.

3. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

4. *Guidry v. Theriot,* 377 So.2d 319, 322 (La. 1979).

5. *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); and *Abdul-Alim Amin v. Universal Life Insurance Co.,* 706 F.2d 638 (5th Cir.1983).

In *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), the Supreme Court held that a states' tolling rules are an integral part of the policies served by the state statute of limitation and they generally govern in the absence of overriding federal rule or affirmative countervailing federal considerations. The Court specifically held that there was no direct conflict between Federal Rule of Civil Procedure 3, which provides that a suit is commenced by filing a complaint with the Court, and an Oklahoma statute which required service of process of a complaint in order to deem a suit commenced for statute of limitation purposes. The Court applied the state prescriptive law to bar the action, concluding that there was an absence of controlling federal law which specifically addressed the issue raised in the diversity case.

In accord with the *Walker* decision, appellate courts have held that state laws determine the timeliness of state law claims and related issues such as which events commence an action or toll the statute of limitations. *Hensgen [Hensgens] v. Deere & Company*, 869 F.2d 879 (5th Cir.1989)....[6]

The precise issue before this Court with regard to Loretta Ann Young's wrongful death claim is whether a post-prescription amendment to the pleadings adding a party plaintiff will relate back to a timely filed original petition.

A review of pertinent federal procedural law reveals that there is no provision which specifically addresses amendment to the pleadings "adding a party plaintiff" within the context of this case. Defendants urge this Court to adopt the rule of *Pappion v. Dow Chemical Co.*, 627 F.Supp. 1576, 1579 (W.D.La.1986) and *LeMasters v. K-Mart Inc.*, 712 F.Supp. 518, 520 (E.D.La.1989)

that F.R.C.P. 15(c) regarding amendments to the pleading sets forth the law applicable to this case.[7]

Preliminarily the Court makes special mention of the fact that Rule 15(c) does *not* specifically address the relation back of an amendment to the pleadings adding a new party plaintiff. Rather, the Rule addresses "[a]n amendment changing the *party against whom a claim is asserted*," i.e., changing or substituting defendants. The provisions of said rule establishing "notice" as the "linchpin"[8] apply to substitution of a defendant not named in the original petition and so the rule's obvious purpose, "to protect parties who are not named in the original complaint from prejudice that may arise when *'they are subsequently brought in by amendment.'"*[9]

The Louisiana Supreme Court in *Giroir v. South Louisiana Medical Center*, 475 So.2d 1040 (La.1985) allowed the late filing of the children's claim for wrongful death of their mother to relate back to the date when their father, in his own name, had timely filed a wrongful death action.

The rationale behind the *Giroir* decision was explained by the Court as follows:

Through the original [timely] pleading the defendants knew that judicial relief was sought arising from the general factual situation alleged, and they were put on notice that their evidence concerning it should be collected and preserved. The fundamental purpose of prescription statutes is only to afford a defendant economic and psychological security if no claim is made timely, and to protect him from stale claims and from loss of non-preservation of relevant proof. They are designed to protect him against the lack of notification of a formal claim within the prescriptive period, not against plead-

---

**6.** See, Report and Recommendation filed on March 27, 1991 adopted by Judge Arcenaux on May 2, 1991 in the case entitled, "Ernest Davis, Sr. v. Johns-Manville Products, Et Al", CA No. 77-2282 c/w 89-5094.

**7.** The *LeMasters* court recognized that relation back of amendments *changing plaintiffs* is not addressed in Rule 15(c), but that advisory committee note to the Rule provides that "'the atti-

tude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs'...." 712 F.Supp. at 519.

**8.** *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 2385, 91 L.Ed.2d 18 (1986).

**9.** *Id.*, at 2387.

522

ing mistakes that his opponent makes in filing the formal claim within the period. *Id.,* at 1045.

In *Giroir,* the filing of the formal claim of wrongful death by one member of the family was enough to allow the otherwise untimely amendment of other family members to relate back to the original pleading. The issue before the Court was whether or not amending the original petition to add new parties related back to the date similar claims had been asserted.[10]

The Court in *Giroir* set forth a four part test to determine whether a post-prescription amended petition adding a party plaintiff will relate back to the timely filed original petition, which follows:

(1) The amended claim arises out of the same conduct, transaction or occurrence set forth in the original pleading;

(2) The defendant either knew or should have known of the existence and involvement on the new plaintiff;

(3) The new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated;

(4) The defendant will not be prejudiced in preparing and conducting his defense. *Id.,* at 1044.

The Court further noted that the defendants were aware of the decedents children and grandchildren from the recorded visits in the medical records. The *Giroir* Court specifically found that the defendants were given ample time to prepare their defense and that they failed to show that they were in any way injured or impaired in their ability to investigate, preserve evidence, and prepare defenses on the liability and quantum issues. The Court dismissed the prejudice arguments of defendants as insupportable, given the fact that a timely formal wrongful death claim was lodged.

■ Under Louisiana law, the burden of proof is on the new plaintiff in this case Loretta Ann Young, to show why her claim has not prescribed.[11] Plaintiff herein asserts that defendant Foster Wheeler should have known of her existence because medical records obtained by defendants indicated the decedent Albert Bergeron had two children and in particular the medical records of Dr. Jayne Gurtler reveals that decedent had a daughter.[12]

There are simply no affidavits or documents in the record supporting plaintiff's bare allegations of knowledge aforementioned. The evidence of record is uncontroverted to the effect that Foster Wheeler and/or Flintkote's first knowledge and/or notice of the existence of Ms. Young was post-prescription, on October 3, 1990, when defendants deposed Belva Bergeron. The record further indicates any medical records in defendants' possession were not received until after the date of Belva Bergeron's deposition and that Dr. Jayne Gurtler's records make no mention of a surviving daughter [i.e., Ms. Young]. In fact, Dr. Gurtler's records suggest the opposite— that decedent's daughter predeceased him. Finally, Foster Wheeler's employee's field records neither mention nor request information regarding decedent's children. It appears undisputed in the record on defendants motion for partial summary judgment, that defendants had no knowledge of the existence of decedent's surviving major child Loretta Ann Young, either based on

---

**10.** "The *Giroir* court carefully limited its decision to the addition or substitution of parties vis a vis existing claims and cited cases decided under the similar 'relation back' provisions of Rule 15(c) of the Federal Rules of Civil Procedure, upon which the Louisiana rule had been modeled. The Court observed these cases had established certain criteria to be applied in determining whether or not a party-adding amendment related back, adding by way of illustration, that a '... substitute defendant must not be a wholly new or unrelated defendant *since this would be tantamount to assertion of a new cause of action which would have otherwise* prescribed.'" *Ducre v. Mine Safety Appliances Co.,* 634 F.Supp. 696, 699 (E.D.La.1986).

**11.** *Farber v. U.S. Fidelity and Guaranty Insurance Co.,* 561 So.2d 951, 952 (La.App. 4th Cir. 1990) ["In any prescription situation, when the case has prescribed by reference to the dates of the event sued on and of the filing of the suit, the burden is upon the plaintiff to show why his claim has not prescribed."].

**12.** See, Plaintiff's Memorandum in Opposition, filed May 15, 1991 and Plaintiff's Statement of Contested Material Facts attached thereto.

employee records or on medical records, prior to the deposition of Belva Bergeron, which deposition occurred after Ms. Young's wrongful death claim prescribed.[13]

As to whether defendant knew or should have known of plaintiff's existence, the statement of opinion in *Poirier v. Browning Ferris Industries*, 517 So.2d 998 (La. App. 3rd Cir.1987), *cert. denied*, 519 So.2d 105 (La.1987) is right on point. The original plaintiff Mike Poirier filed suit on May 20, 1985, alleging injuries suffered from an accident at work on May 21, 1984. On March 21, 1986, he filed an amended petition seeking to add the claim of his wife Patricia Poirier, for loss of consortium.

The *Poirier* court distinguished *Giroir* on the basis that the defendants in *Giroir* knew of the existence of the children through conversations with the decedent, visits made by the children, and medical records in the defendants possession. The *Poirier* court noted contrasting facts in the case before it, as follows:

> Nothing in the original Petition puts the defendants on notice that Mike Poirier had a wife, much less that she might have an action for damages. The defendants had no records concerning Poirier which would indicate his marital status. *Poirier*, supra, at 999.

Based on the above analysis, the *Poirier* court affirmed the district court's dismissal of the wife's claim, as prescribed.

Concerning this second consideration of the four part test announced in *Giroir*, supra, the Louisiana First Circuit Court of Appeal in *Duffie v. Southern Pacific Transportation Co.*, 563 So.2d 933, 935 (La.App. 1st Cir.1990) explained:

> It is not incumbent upon a defendant to try to track down ex-spouses or non-custodial parents every time a suit is filed involving minor children. Absent

such a duty, defendants could not have known nor should they have known about Mr. Lockridge and his possible claim.

Rather, it was the responsibility of Mr. Lockridge to be concerned enough about his daughter to know when and how she was killed and if he chose to file a lawsuit, to do it sooner than 23 months after the event.

■ A review of pertinent Louisiana jurisprudence reveals no duty on the part of a defendant to track down a surviving major child, when a suit is filed involving a wrongful death of his or her father. Absent such a duty, defendants, Foster Wheeler and Flintkote could not have known nor should they have known about the existence of Loretta Ann Young and her possible claim. Borrowing language from the *Duffie* decision, it was the responsibility of Ms. Young, a major at the time of Mr. Bergeron's death, to be concerned enough about her father to know when and where he was killed, and if she chose to file a lawsuit, to do it sooner than 18 months after the event.

Inasmuch as it appears that notice is the linchpin whether this Court applies federal procedural law [i.e., F.R.C.P. 15(c) ][14] or the applicable state law [i.e., *Giroir*, supra], and that documents of record are uncontroverted to the effect that defendants had no notice of the existence of decedent's daughter prior to the deposition of Belva Bergeron on October 3, 1990, and that Louisiana law ascribes no duty to defendant to ascertain the existence of potential plaintiffs, partial summary judgment should be granted in favor of defendants, Foster Wheeler Corporation and Flintkote Company, dismissing the wrongful death claim of the plaintiff Loretta Ann Young, with prejudice.[15]

---

**13.** See, Medical Records and Employee Records, [i.e., Responses to Discovery Various Discovery Requests], attached to Movers' Supplemental Memorandum in Support as Exhibits "A", "B", and "C" respectively.

**14.** See, *Schiavone*, supra at note 9.

**15.** See, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and

*Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) ["Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, summary judgment motion may properly be made in reliance solely on pleadings, depositions, answers to interrogatories, and admissions on file ... so that the nonmoving party must go beyond the pleadings

3. *Plaintiffs' Wrongful Death Claims and the Applicability and Preclusive Effect of the Post–1976 Louisiana Worker's Compensation Statute.*

In *Guidry v. Theriot,* 377 So.2d 319, 323 (La.1979) the Louisiana Supreme Court discussed both the survival action and the wrongful death action, and described these actions as separate and distinct, though Louisiana Civil Code Article 2315 governs both rights of action and both actions arise from a common tort, to wit:

We conclude that each of these actions is a separate and distinct cause of action. Although both actions arise from a common tort they are, nevertheless, separate and distinct because *each arises at a different time.* The survival action comes into existence simultaneously with the commission of the tort and is transmitted to the beneficiaries upon the victim's death. *The wrongful death action does not arise until the victim dies. Each right addresses itself to the recovery of damages for totally different injuries and losses.* The survival action permits the recovery only of the damages suffered by the victim from the time of injury to the moment of death. *The wrongful death action is intended to compensate the beneficiaries for compensable injuries suffered from the moment of death and thereafter. Id.* (emphasis supplied).

In *Trupiano v. Smith & Co.,* 755 F.2d 442, 444 (5th Cir.1985), the Fifth Circuit addressed the determinative issue before this Court—that is when, under Louisiana law, does the wrongful death action arise? The Fifth Circuit concluded as did the Louisiana Supreme Court in *Guidry,* supra, that the wrongful death action does not arise until the decedent's death.

In *Trupiano,* the surviving widow and six children of a deceased workman brought both wrongful death and survival actions against their decedent's former employer. In deciding that the wrongful claim did not arise until Mr. Trupiano's death, the Fifth Circuit cited several Louisiana appellate court cases [16] which were similarly decided.

Plaintiff in the case at bar submits that *Faciane v. Southern Shipbuilding Corp.,* 446 So.2d 770 (La.App. 4th Cir.1984) is apposite. This Court disagrees because *Faciane* involved a survival action and *not* a wrongful death action. In *Faciane,* the court was asked to determine when the injured plaintiff, who was still alive, first had a cause of action for his silica-related injuries. The *Faciane* case bears no parallel to the case at bar.

to show that there is a genuine issue for trial on the merits."].

**16.** *Smith v. Hurd,* 408 So.2d 357 (La.App. 1st Cir.1981) involved silicosis death claim against the executive officers of the decedent's employer's company. Plaintiff argued on appeal that the trial court erred in granting defendant's exceptions because the here cause of action for wrongful death arose when the decedent's injuries were inflicted, all of which took place prior to the 1976 amendment to the Louisiana Worker's Compensation Act. The appellate court affirmed the lower court and held: "Plaintiff's reasoning is faulty. Her cause of action for the wrongful death of her husband could not arise prior to his death. When he died, after the effective date of Act 147 of 1976, executive officer suits were prohibited by the Amendment." *Id.,* at 359.

Addressing precisely the same issue [i.e., when a cause of action arises for a wrongful death claim], the Louisiana Fourth Circuit Court of Appeal in *Holmes v. Pottharst,* 438 So.2d 622 (La.App. 4th Cir.1983), *cert. denied,* 447 So.2d 1076 (La.1984) concluded likewise. The plaintiff in *Holmes* argued that the district court erred by interpreting Act 147 of 1976 to prohibit her wrongful death claim, where the unintentional acts upon which she based her claim occurred prior to the effective date of the 1976 Amendments and her husband's death occurred after said Amendments became effective. Finding that the plaintiff had no cause of action for the wrongful death of her husband, the *Holmes* court explained:

The wrongful death action in C.C. Art. 2315 gives the beneficiaries the right to recover from the tortfeasor such damages as the beneficiaries have suffered as a result of the victim's wrongful death. Obviously, the action cannot arise until the victim dies and is intended to compensate the beneficiaries for damages they suffer from the moment of death and thereafter. Although the wrongful death action arises from a common tort, it is a separate and distinct action from the survival action. It never existed or arose in favor of the victim. *Id.,* at 624.

In *Wallace v. Kaiser Aluminum and Chemical Company*, 578 So.2d 206 (La. App. 4th Cir.1991), one Louisiana appellate court noted in a wrongful death case that the *focal event for accrual of a cause of action* as the point in time when disease will develop independent of further exposure (i.e. the contraction theory).[17]

■ The "contraction theory" is simply that the injury from occupational disease occurs when the cumulative exposure reaches such a point that absent further exposure, disease or death will result, rather than the time at which the disease is diagnosed or manifested by physical symptoms.[18]

In *Wallace*, the decedent died of lung cancer in 1984, after having been diagnosed with asbestosis in 1972, allegedly due in part to asbestos exposure at Kaiser. The decedent had been employed at Kaiser between 1952 and 1972. As to decedent's lung cancer [which was not listed as an "occupational disease"], the court held that because his exposure occurred prior to 1976, the cause of action arose at a time when lung cancer was not on the list of applicable diseases covered by L.R.S. 23:1031.1. However, the decedent in *Wallace* had been additionally diagnosed with asbestosis which was covered by Louisiana Worker's Compensation Act prior to 1976. Accordingly, *Wallace* court affirmed the dismissal of the plaintiffs' wrongful death action.

Dicta in the *Wallace* decision to the effect that but for the pre–1976 diagnosis of "asbestosis" which was listed as an "occupational disease" prior to the 1976 Amendment, the plaintiffs' argument therein would have merit, clearly stands alone. Said dicta relied on by plaintiffs in the case at bar is an aberration, not in line with other Louisiana appellate decisions and in direct conflict with its earlier precedent in *Holmes*, supra.

Louisiana Revised Statute 23:1032 addresses "exclusiveness of rights and remedies; employer's liability to prosecution under other laws." In 1976, LSA–R.S. 23:1032 was amended by Act 147 to provide, in part, as follows:

The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be *exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer,* or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease ...

Nothing in this Chapter shall affect the liability of the employer, ... to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.

Foster Wheeler was unquestionably Albert Bergeron's employer at all pertinent times, and died on August 1, 1989, the date on which under Louisiana law, Belva Bergeron's and Loretta Ann Young's wrongful death action arose.

To recapitulate, in the case at bar, it is not disputed that the decedent's exposure to asbestos ceased in the late sixties and that his disease, "mesothelioma," was not diagnosed until 1988.

■ Defendant Foster Wheeler does not contest that prior to the 1976 amendment, Act 532 of 1952 governed actions based on "occupational diseases" listed in the Act, and "mesothelioma" was not one of the diseases listed as a covered disease therein. Under the Act, if an employee were afflict-

---

**17.** The *Wallace* court cites other Louisiana jurisprudence which addressed the contraction theory, to wit: *Owens v. Martin*, 449 So.2d 448, 450 (La.1984) ["The merits of defendants' motion therefore depends on a determination of when Owen's *(hence plaintiffs' survival action)* accrued."]; *Faciane v. Southern Shipbuilding Corp.*, 446 So.2d 770, 773 (La.App. 4th Cir.1984); and *Quick v. Murphy Oil Co.* 446 So.2d 775 (La.App. 4th Cir.), *cert. denied,* 447 So.2d 1074 (La.1984). *Owens, Faciane,* and *Quick,* supra, each discuss the "contraction theory" first espoused in *Faciane* in the context of the survival action or the injured party's own claim *not* the wrongful death action.

**18.** *Faciane,* supra at 773.

ed with a disease which was not as an "occupational disease" covered by the Act, he was allowed to pursue his remedy in tort against his employer and its executive officers.[19] However, these assertions are clearly immaterial to the issue before this Court, in light of Louisiana law to the effect that the wrongful death action does not arise until the date of the death of plaintiff's decedent.

LSA–R.S. 23:1032 as amended by Act 147, the law applicable to plaintiffs' wrongful death claims, serves to bar said actions, decedent's dependant's and/or relation's sole remedy being in worker's compensation. Partial summary judgment dismissing plaintiff's wrongful death claims against decedent's employer Foster Wheeler is appropriate under the undisputed facts.[20]

4. *Plaintiff's Motion to Extend Deadline For Amendments to the Pleadings.*

■ On April 18, 1990, well over a year ago, plaintiff filed suit against defendant Foster Wheeler Corporation for damages resulting from the death of her husband, Albert Bergeron. Originally, plaintiff's suit was consolidated in Group 22 of the Manguno cases. On August 10, 1990, when discovery had been ongoing approximately 4 months, a status conference was held before Magistrate Wynne, pursuant to which the above captioned matter was transferred and consolidated with Manguno Group 20. At that time, trial in the matter was scheduled for March 25th, 1991 and any amendments to the pleadings had to be filed on or prior to November 15, 1990.

On November 19, 1990, at plaintiffs' request, Magistrate Wynne granted a continuance in the Bergeron matter and again transferred the case to be consolidated with Manguno Group 23. On April 5, 1991, Magistrate Wynne held a second status conference to set deadlines in the case at bar as a Manguno Group 23 case. Pursu-

ant to Magistrate Wynne's Minute Entry of April 5, 1991, plaintiffs were directed to file any amendments on or before May 20, 1991, with trial to commence on October 28, 1991.

Despite the passage of time, that is from filing suit up until May 1991, plaintiffs did not initiate discovery seeking information regarding Foster Wheeler's executive officers.

On May 13, 1991, with the second deadline for filing amendments close at hand, plaintiffs noticed the corporate F.R.C.P. Rule 30(b)(6) deposition of defendant Foster Wheeler set May 15, 1991. Defendants submit that as early as April 9, 1991, plaintiffs' counsel reviewed and received Foster Wheeler's documents which identified the project manager, along with all other Foster Wheeler personnel who worked during the same time period as the decedent.

Defendant argues that "plaintiffs' procrastination in initiating discovery in this proceeding" supplies the sole reason for their requested extension and resetting the deadline for amendments to the pleadings for the third time.[21] Plaintiffs submit to the contrary that their discovery efforts have been diligent and continuous since the inception of the suit. The record, however, does not support plaintiffs' contention with respect to defendant Foster Wheeler. Accordingly, and for all of the above and foregoing reasons,

IT IS ORDERED that defendants, Foster Wheeler and Flintkote Company's Motion for Partial Summary Judgment dismissing with prejudice the wrongful death claim on behalf of plaintiff Loretta A. Young be and hereby is GRANTED;

IT IS FURTHER ORDERED that defendant employer Foster Wheeler's Motion for Partial Judgment dismissing plaintiffs', Belva Bergeron's and Loretta A. Young's

19. *Trupiano v. Swift & Co.*, 755 F.2d 442, 445 (5th Cir.1985).

20. *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

21. See, Foster Wheeler's Memorandum in Opposition to Plaintiff's Motion to Extend the Deadline for Amendments to the Pleadings and accompanying documents.

wrongful death claims with prejudice, their exclusive remedy being in worker's compensation, be and is hereby GRANTED;

IT IS FURTHER ORDERED that plaintiffs', Belva Bergeron's and Loretta A. Young's Motion to Extend the Deadline for Amendment to the Pleadings, be and is hereby DENIED.